UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------x
ROOSEVELT ROSE,

          :

          Plaintiff,      REPORT & RECOMMENDATION

          :

    -against-         06 Civ. 464 (LAK)(MHD)

          :

CORRECTION OFFICER MASIEY
#4610 et al.,          :

          Defendants.   :
----------------------------x
ROOSEVELT ROSE,

          :

          Plaintiff,

          :

    -against-         05 Civ. 8829 (LAK)(MHD)

          :

CITY OF NEW YORK DEPARTMENT
OF CORRECTION ET AL.,     :

          Defendants.   :
----------------------------x
ROOSEVELT ROSE,

          :

          Plaintiff,

          :

    -against-         05 Civ. 8828 (LAK)(MHD)

          :

CITY OF NEW YORK DEPARTMENT
OF CORRECTION ET AL.,     :

          Defendants.   :
----------------------------x

TO THE HONORABLE LEWIS A. KAPLAN, U.S.D.J.:

    Pro se plaintiff Roosevelt Rose is an inmate in the New York
State correctional system. In three lawsuits filed in 2005 and
2006, while he was in New York City custody, he sued thirteen

identified correctional officers from three Rikers Island facilities -- the Anna M. Kross Center ("AMKC"), the Otis Bantum Correction Center ("OBCC") and the George Motchan Detention Center ("GMDC") -- as well as Brian Riordan, the Warden of the AMKC; Carlis E. Thompson, the acting warden of the OBCC; Patrick Walsh, the Warden of the GMDC; Martin Horn, who was the Commissioner of the New York City Department of Correction; and several other individuals.[1] Invoking 42 U.S.C. § 1983, plaintiff asserted claims for denial of his First and Fourteenth Amendment right to practice his religion, for which he sought damages and injunctive relief.[2]

Following the expiration of the discovery period, defendants have filed a motion for summary judgment. Plaintiff has not responded to the motion, although he was given notice, pursuant to S.D.N.Y. Civil Rule 56.2, of his obligations in seeking to oppose

---

[1] In the first of plaintiff's cases, he named an Imam Muhammad of the OBCC, as well as Alvin Mack, the manager of its commissary. (Am. Compl. (No. 05 Civ. 8828) 1, 4).

[2] These three lawsuits press essentially the same claims, although their list of defendants only partially overlap. They are now docketed respectively as Rose v. Muhammad, No. 05 Civ. 8828 (S.D.N.Y. filed Oct. 18, 2005); Rose v. Morgan, No. 05 Civ. 8829 (S.D.N.Y. filed Oct. 18, 2005); and Rose v. Correction Officer Masiey #4610, No. 06 Civ. 464 (S.D.N.Y. filed Jan. 23, 2006). In the first two cases, Rose filed amended complaints. Although he sought leave to amend his complaint in the third case, we denied that request in light of his failure to specify the nature of the intended amendment.

2

this motion. For the reasons that follow, we recommend that the motion be granted.

### Prior Proceedings

### A. Plaintiff's Claims

Plaintiff's three lawsuits are among a group of more than a dozen cases filed more or less contemporaneously by current or former Muslim inmates at the Rikers Island prison facilities, all of whom complained about the handling of food and related items at the prison dining facilities. All alleged that the New York City Department of Correction ("DOC") had failed to provide them with meals that comply with the Halal requirements of their faith and had thereby denied them the free exercise of their religion, in violation of their First and Fourteenth Amendment rights.

We read plaintiff's allegations liberally in deference to his pro se status. E.g., Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). We infer that, except where Rose makes additional allegations, he is asserting the same claims and, in substance, making the same allegations as the pro se plaintiffs in the parallel Halal cases that this court has previously decided. See

3

<u>Wales v. City of New York</u>, 2008 WL 728870, at *1 (S.D.N.Y. Mar. 18, 2008); <u>Robinson v. City of New York</u>, 2008 WL 756101, at *2 (S.D.N.Y. Mar. 5, 2008), <u>report</u> <u>and</u> <u>recommendation</u> <u>adopted</u> <u>in</u> <u>part</u>, 2008 WL 756082 (S.D.N.Y. Mar. 21, 2008); <u>Wesley v. Muhammad</u>, No. 05 Civ. 5833 (GEL)(MHD) (S.D.N.Y. May 25, 2010) (report & recommendation on summary judgment motion) ("<u>Wesley</u> R&R") at 5-6. In particular, we read Rose's pleadings in light of the more specific allegations set forth in the Rule 56 motion in the parallel case of <u>Wesley v. Muhammad</u>, 05 Civ. 5833 -- the one case among this group in which the plaintiff was, for a time, represented by <u>pro</u> <u>bono</u> counsel. <u>See</u> <u>Wesley</u> R&R at 5-6.

Mr. Rose alleged, in substance, that prison personnel had failed to provide proper Halal meals to him and to other Muslim inmates as the result of several prison practices that rendered their meals non-Halal. These included the stacking and washing together of Halal and non-Halal trays,[3] the use of soap that contains pork by-products, the failure to cook thoroughly the Halal

---

[3] According to the <u>Wesley</u> complaint, the DOC dining facilities color-code the food trays, with one color designating trays for Halal food and another for non-Halal food. (<u>See</u> <u>Wesley</u> R&R at 5, 35). This separation is apparently done to avoid what would otherwise be possible contamination of the Halal food if it were placed on trays that have previously been used to carry non-Halal food. It also identifies to service personnel whether the inmate wants Halal food.

4

meat, the failure to separate the Halal from the non-Halal utensils and food pans and carts, the failure to identify the Halal utensils and other kitchen items, and the failure to provide Halal meals to prisoners returning from court. (Am. Compls. (Nos. 05 Civ. 8828, 05 Civ. 8829) at pp. 5-a to d, 5-f to g). Plaintiff also complained about the manner in which food items are sold at the commissaries, alleging that the commissaries sold both Halal and non-Halal foods but failed to identify which items were non-Halal. He appeared to allege that the Muslim inmates unknowingly purchased non-Halal food products, which, when placed on Halal-designated trays, resulted in contamination and rendered those trays subsequently non-Halal. (See Am. Compls. (Nos. 05 Civ. 8828, 05 Civ. 8829) at pp. 5-a to d, 5-f to H; Compl. (No. 06 Civ. 464) at 3).

In plaintiff's complaints, he further alleged that he had filed grievances with each of the Rikers Island prison facilities at which he was confined and, in the case of Rose v. Maisey, that he "got no answer" (Compl. (No. 06 Civ. 464) at 4), and in the other two cases that there was no "result" from his grievances. (Am. Compls. (Nos. 05 Civ. 8828, 05 Civ. 8829) at 3). He also alleged that the defendant wardens and Commissioner, as well as all of the other defendants, were notified of these problems (Am. Compls. (Nos. 05 Civ. 8828, 05 Civ. 8829) at pp. 5-f, 5-H), and

5

that he himself notified the wardens and Commissioner. (Am. Compls.
(Nos. 05 Civ. 8828, 05 Civ. 8829) at 5-a; Compl. (No. 06 Civ. 464)
at 4).

As for the role of the defendants named in Rose's lawsuits, he
alleged that the corrections officers all work at the prison
commissaries and are thus responsible for the sale of non-Halal
food items without identification of their non-Halal status. (See
Am. Compls. (Nos. 05 Civ. 8828, 8829) at pp. 5-a to b, 5-d to H, 7-
a). He further asserted that the Commissioner, the wardens and the
manager of the OBCC commissary have all been repeatedly notified of
the cited failures to provide proper Halal meals and the sale of
unidentified non-Halal foods at the commissaries, and that those
officials failed to act to correct these problems. (See Am. Compls.
(Nos. 05 Civ. 8828, 8829) at pp. 5-a, 5-f, 5-H, 7-a). These
allegations concerning the defendants' personal involvement mirror
those asserted in the parallel Halal-related cases that the court
has already decided. See, e.g., Wesley, 2008 WL 123812 at *2, 6-7;
Randolph v. N.Y.C. Dep't of Corr., 2007 WL 2660282, at *2 (S.D.N.Y.
Sept. 7, 2007); Mason v. Masley, No. 06 Civ. 1829 (GEL)(MHD)
(S.D.N.Y. Feb. 11, 2008) (report & recommendation) at 5-6.

6

B. Subsequent Proceedings

At the outset of the litigation, defendants moved to dismiss Mr. Rose's three complaints on a variety of grounds, including failure to exhaust administrative remedies, failure to state cognizable claims, and qualified immunity. The court dismissed the complaints as against seven individual defendants but otherwise denied the motion. Rose v. Masiev, 2008 WL 706254, *1 (S.D.N.Y. Mar. 14, 2008).

In view of the acquisition of counsel by the plaintiff in the Wesley case, further pre-trial proceedings in Mr. Rose's lawsuits remained quiescent until the court granted summary judgment in Wesley with respect to all claims except that concerning the defendants' practice of washing all Halal and non-Halal trays and other kitchen equipment together. (Wesley, No. 05 Civ. 5833 (GEL)(MHD) (S.D.N.Y. July 19, 2010) (order adopting report & recommendation)). Although discovery remained open in Rose's cases for an extended period, it is not clear whether plaintiff participated in any way, although defendants apparently did unsuccessfully seek documents from him. (See Bowe Decl. ¶ 5; Defs.' R. 56.1 Statement ¶ 7). Finally, with discovery closed, defendants filed their summary-judgment motion, to which, as noted, plaintiff

7

has not responded.


C. The Current Motion


In defendants' current motion, they seek the dismissal of all of plaintiff's remaining claims on a variety of grounds. First, they assert that plaintiff's requests for injunctive and declaratory relief are moot because Rose is no longer in the City prison system. (Defs.' Memo of Law at 3). Second, they represent that there is no record of plaintiff ever filing a prison grievance during the relevant time periods, and that, in any event, in his pleading he effectively admitted that he had never grieved any claim other than his complaint about commissary sales. (Id. at 3-5). Third, defendants invoke various rulings by the court in the Wesley case as dispositive of all but one claim by Rose -- the exception being a claim for failure to provide Halal meals to prisoners returning from court -- and they assert that this one claim is so plainly meritless as to justify summary judgment disposing of it. (Id. at 5-15). Fourth, defendants invoke the Prison Litigation Reform Act ("PLRA") prohibition on recovery of damages in the absence of physical injury, and they assert that plaintiff has not pled and cannot prove that he ever suffered such an injury. (Id. at 15-16). Fifth, defendants seek to invoke

8

qualified immunity as a defense for the individually named defendants. (<u>Id.</u> at 16-18). Sixth, they argue that plaintiff cannot demonstrate the personal involvement of any of these defendants in any alleged constitutional tort. (<u>Id.</u> at 18-22). Finally, they argue that plaintiff cannot prove the required factual basis for liability by the City under a <u>Monell</u> theory and that any pendent state-law claims should be dismissed. (<u>Id.</u> at 22-24).

ANALYSIS

Before assessing defendants' arguments, we briefly summarize the oft-repeated standards for evaluating a motion for summary judgment.

I. <u>Summary Judgment Standards</u>

The court may enter summary judgment only if it concludes that there is no genuine dispute as to the material facts and that, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>see</u>, <u>e.g.</u>, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Feingold v. New York</u>, 366 F.3d 138, 148 (2d Cir. 2004). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of

9

the suit under the governing law [while] [a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Shade v. Hous. Auth., 251 F.3d 307, 314 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). It is axiomatic that the responsibility of the court in deciding a summary-judgment motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986); see, e.g., Anderson, 477 U.S. at 255; Howley v. Town of Stratford, 217 F.3d 141, 150-51 (2d Cir. 2000).

The party moving for summary judgment bears the initial burden of informing the court of the basis for his motion and identifying those portions of the "pleadings, the discovery and disclosure materials on file, and any affidavits" that demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c); see, e.g., Celotex, 477 U.S. at 323; Koch v. Town of Brattleboro, 287 F.3d 162, 165 (2d Cir. 2002). If the non-moving party has the burden of proof on a specific issue, the movant may satisfy his initial burden by demonstrating the absence of evidence in support of an essential element of the non-moving party's claim. See, e.g.,

10

<u>Celotex</u>, 477 U.S. at 322-23, 325; <u>PepsiCo, Inc. v. Coca-Cola Co.</u>, 315 F.3d 101, 105 (2d Cir. 2002); <u>Goenaga v. March of Dimes Birth Defects Found.</u>, 51 F.3d 14, 18 (2d Cir. 1995).


    If the movant fails to meet his initial burden, however, the motion will fail even if the opponent does not submit any evidentiary materials to establish a genuine factual issue for trial. <u>See</u>, <u>e.g.</u>, <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 160 (1970); <u>Giannullo v. City of New York</u>, 322 F.3d 139, 140-41 (2d Cir. 2003). If the moving party carries his initial burden, the opposing party must then shoulder the burden of demonstrating a genuine issue of material fact on any such challenged element of his claim. <u>See</u>, <u>e.g.</u>, <u>Beard v. Banks</u>, 548 U.S. 521, 529 (2006); <u>Celotex</u>, 477 U.S. at 323-24; <u>Santos v. Murdock</u>, 243 F.3d 681, 683 (2d Cir. 2001). In doing so, the opposing party may not rest "merely on allegations or denials" of the factual assertions of the movant, Fed. R. Civ. P. 56(e); <u>see also</u>, <u>e.g.</u>, <u>Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti</u>, 374 F.3d 56, 59-60 (2d Cir. 2004), nor may he rely on his pleadings or on merely conclusory factual allegations. <u>See</u>, <u>e.g.</u>, <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 41 (2d Cir. 2000). He must also "do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>,

475 U.S. 574, 586 (1986); see also Woodman v. WWOR-TV, Inc., 411
F.3d 69, 75 (2d Cir. 2005). Rather, he must present specific
evidence in support of his contention that there is a genuine
dispute as to the material facts. See, e.g., Celotex, 477 U.S. at
324; Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998); Rexnord
Holdings, Inc. v. Bidermann, 21 F.3d 522, 526 (2d Cir. 1994).


     Finally, even if the court does not grant summary judgment co-
extensive with the relief sought by either movant, it may provide
partial relief. Moreover, that relief may be as limited as a
declaration that one or more material facts are "not genuinely in
dispute" and that those facts are deemed "established in the case."
Fed. R. Civ. P. 56(g).


     II. Assessment of the Motion


     A. Injunctive or Declaratory Relief


     There is no dispute that Mr. Rose is no longer in City
custody, having been transferred to the New York State Department
of Correctional Services. (Defs.' R. 56.1 Statement ¶ 4). That
being the case, and in the absence of any current prospect of his
returning to Rikers Island, any equitable relief that he might be

12

deemed to be seeking[4] is moot. See, e.g., Thompson v. Choinski, 525 F.3d 205, 208 (2d Cir. 2008); Candalaria v. Coughlin, 787 F. Supp. 368, 378 (S.D.N.Y. 1992); cf. Penyotti v. Annucci, 2011 WL 666357, *2 (S.D.N.Y. Feb. 7, 2011).


B. Exhaustion


In plaintiff's pleadings, he alleged that he had filed grievances concerning the failure of the prison commissaries to clearly indicate which food items that were for sale complied with Halal requirements. According to plaintiff, he had unknowingly purchased and, presumably, consumed some of these items, to the detriment of his right to the free exercise of his religious beliefs. He further alleged that Halal food trays had been contaminated and rendered non-Halal when he and other unknowing Muslim inmates had placed the non-Halal commissary food items on the Halal-designated trays. He also alleged that he had not received a response to his grievances, and that he had further notified the supervisory defendants, including the wardens and the Commissioner, by letter, again without response. (Am. Compls. (Nos.

---

[4] It is not at all clear from plaintiff's complaints that he is asking for declaratory relief. (See Compl. (No. 06 Civ. 464) at 5; Am. Compls. (Nos. 05 Civ. 8828, 8829) at 6-7).

05 Civ. 8828, 8829) at pp. 3, 5-a, 5-f to H, 7-a; Compl. (No. 06 Civ. 464), at pp. 3-5 & Exs. A-C). As for the contents of those letters, he appended a copy of two of them to one of his pleadings. (Compl. (No. 06 Civ. 464)). In those letters, he specifically referred to the commissary sale of non-Halal products, and also mentioned the failure of the AMKC facility to provide disposable trays for Halal meals, in apparent violation of a DOC written policy. (Compl. (No. 06 Civ. 464) at Exs. B & C).

Defendants have submitted a set of memoranda from within the Department of Correction reporting that a search of grievance files for certain specified time periods for two Rikers Island facilities unearthed no indication that plaintiff had filed a grievance. (Bowe Decl. Ex. E; Defs.' R. 56.1 Statement ¶ 6). Thus, defendants argue that during "the relevant period," which they identify as 2005 and 2006, Rose never filed any grievance. (Defs.' Rule 56 St. ¶ 6; Bowe Decl. Ex. E). They further allude to the fact that during discovery they had asked plaintiff to provide copies of any grievances he had filed, and he had never responded. (Id. ¶ 7; Bowe Decl. ¶ 5). Finally, they note that in plaintiff's complaint he alluded to having grieved only his current claim about the commissaries. (Defs.' Mem. of Law 5). Based on this showing, defendants seek dismissal of the complaint. As noted, plaintiff has not responded.

14

The PLRA prohibits a prisoner from asserting a prison-conditions claim "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The goal of this requirement is "'to reduce the quantity and improve the quality of prisoner suits... [and to afford] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" Amador v. Andrews, 655 F.3d 89, 96 (2d Cir. 2011) (quoting Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004) (quoting Porter v. Nussle, 534 U.S. 516, 524-25 (2002))). The PLRA requires "proper exhaustion," which the Supreme Court has characterized as "'using all the steps that the agency holds out, and doing so properly.'" Woodford v. Ngo, 548 U.S. 81, 90 (2006) (emphasis in original) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)); accord, e.g., Amador, 655 F.3d at 96.

The route to exhaustion is presumptively that laid out by the pertinent prison system in its applicable regulations. See, e.g., Jones v. Bock, 549 U.S. 199, 219 (2007). Of particular note, "an untimely or otherwise procedurally defective" use of the grievance procedure does not satisfy the exhaustion requirement. Woodford, 548 U.S. at 83-84. Failure to exhaust is treated as an affirmative defense, and hence the defendants must prove its factual basis.

15

Jones, 549 U.S. at 216-17.

Under DOC regulations at the time pertinent to plaintiff's claims, prisoners were required to pursue a five-tiered administrative review and appeals system. (See Parris v. New York City, No. 05 Civ. 8830 (S.D.N.Y. May 22, 2013) (report & recommendation describing N.Y.C. DOC Directive #3375R §§ II(B)(1)-(5)) ("Parris R&R") at 24-25). The first step for the inmate is to file a complaint form with the Inmate Grievance Resolution Committee ("IGRC") for informal resolution, which must take place within five working days. If the dispute is not resolved in this fashion, the prisoner must then request a formal hearing before the IGRC, which is required to make a written recommendation for disposition within three working days. If dissatisfied, he must then appeal to the facility warden, who is required to issue a decision within five working days. Failing a favorable decision, the prisoner must appeal to the DOC Central Office Review Committee ("CORC"), which must address the appeal in twenty working days. Finally, the grievant must appeal to the Board of Corrections, which is to issue a recommendation to the DOC Commissioner in twenty days. The Commissioner must then make the final agency decision within ten working days.

16

Under the PLRA, if an inmate fails to exhaust all applicable prison remedies with respect to a claim asserted under section 1983, the federal court may not consider that claim. Johnson v. Rowley, 569 F.3d 40, 45 (2d Cir. 2009) (quoting, inter alia, Jones, 549 U.S. at 211); Torres v. Carry, 672 F. Supp. 2d 338, 342-43 (S.D.N.Y. 2009). The Second Circuit has, however, recognized three exceptions to the PLRA's exhaustion requirements. A prisoner may proceed with a prison-conditions claim even when he has not exhausted his administrative remedies if "(1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such as way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement." Ruggiero v. Cnty. of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citing Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004)).

The Second Circuit has not yet definitively stated whether a successful invocation of any of these exceptions would survive the Supreme Court's decision in Woodford v. Ngo, which requires that prisoners properly exhaust their administrative remedies by "using all steps that the agency holds out, and doing so properly." 548

17

U.S. at 90 (emphasis in original) (quoting Pozo, 286 F.3d at 1024).

Nonetheless, courts within this circuit have continued to apply the

three-exception analysis to prison-condition claims where the

prisoner is alleged to have failed to properly exhaust his

remedies. Compare, e.g., Amador, 655 F.3d at 102-03 (invoking

Macias v. Zenk, 495 F.3d 37, 43 n.1 (2d Cir. 2007), which declined

to "decide what effect Woodford has on Hemphill's" three-exception

rule), and Ruggiero, 467 F.3d at 176, with Vogelfang v. Riverhead

Cnty. Jail Officers, 2009 WL 230132, at *2 (2d Cir. Feb. 2, 2009)

(remanding a summary-judgment decision to the district court, which

had failed to "consider whether [plaintiff's] failure... to exhaust

administrative remedies should be excused under the Hemphill line

of cases"), Jones v. Allen, 2010 WL 3260081, at *3 (S.D.N.Y. Aug.

9, 2010) (suggesting that at least the first two exceptions to the

exhaustion requirement remain valid post-Woodford), and Partee v.

Goord, 2007 WL 2164529, at *4 (S.D.N.Y. July 25, 2007) (concluding

that plaintiff was justified in failing to exhaust his claim with

Central Office Review Committee where the IGRC decision declared

his grievance to be outside its purview).

There is no dispute that plaintiff knew of the required

grievance procedures. Thus, he represented in his complaints that

he had sent grievances to the "grievance office" -- presumably the

IGRC -- concerning the sale of non-Halal items at the commissary. (Compl. (No. 06 Civ. 464) at 4; Am. Compls. (Nos. 05 Civ. 8828, 8829) at 3). As for whether he actually satisfied the Department of Correction regulations governing prison grievances, the record seems to reflect that he did not do so.

We first note that defendants' proffer of a set of memoranda from the DOC referring to a search of the grievance files proves much less than defendants suggest. In their Rule 56.1 Statement they refer to the relevant time period, based on the pleadings, as being 2005 to 2006. (<u>See</u> Defs.' R. 56.1 Statement ¶ 6). In fact, plaintiff's pleadings reflect allegations of violations at three facilities, some dating from as early as 2004. (<u>See</u> Am. Compl. (No. 05 Civ. 8829) at pp. 5-d & 5-e (referring to defendants' participation in commissary transactions on December 3, 2004) & 5-f (alleging failure to serve Halal-compliant meals between January 2004 and January 2005). Yet the DOC memoranda in question indicate that DOC requested, and presumably received, information about a set of searches at only two facilities (AMKC and EMTC[5]), and those searches appear to have encompassed only an approximately six-week

_____

[5] It is not clear whether the EMTC housed plaintiff during the relevant period. His complaints refer only to the AMKC, the OBCC, and the GMDC.

period -- from June 7 through July 17, 2005. (See Bowe Decl. Ex.
E). Since, as noted, plaintiff appears to allege in his 2005 and
2006 pleadings that he was held at three facilities at various
times from 2004 through 2006, the searches that defendants document
were plainly inadequate to demonstrate, by themselves, that
plaintiff had failed to exhaust administrative remedies.[6] Moreover,
although plaintiff did not respond to the motion, that would not in
itself preclude rejection of the exhaustion defense if defendants
were deemed to be relying solely on these DOC searches, since the
inadequacy of their effort is properly viewed as a failure to carry
their initial burden under Rule 56.

      That said, there are additional grounds to uphold defendants'
motion. As noted, plaintiff alleged in his complaints that he had
filed grievances regarding sales at the prison commissary, but his
claims are far broader, encompassing mainly food-handling practices
at the various facilities' kitchens.  If, as his complaint appears

---

      [6] It is possible that the prison grievance files are not
organized by date of filing, but defendants do not so state, and
the memorandum from the DOC Legal Division attorney requesting
the searches lists plaintiff's purported dates of residence at
the AMKC and the EMTC as the apparent search criteria. (See Bowe
Decl. Ex. E at RR 0001). We also note that this memorandum
inexplicably lists overlapping dates of incarceration at the two
facilities, implausibly suggesting that Rose was confined in two
different housing units at the same time. (Id.).

                              20

implicitly to acknowledge, he failed to grieve those kitchen
practices, those claims are not preserved. We further note that,
although plaintiff alludes to having written letters to the warden
of the AMKC facility and to the DOC Commissioner, those letters --
attached to the complaint in No. 06 Civ. 464 -- refer only to the
commissary claims and the absence of disposable trays in the
kitchen, in asserted violation of DOC written policy, but they do
not mention any other asserted breaches of law. Hence, even if the
writing of such letters were otherwise adequate to exhaust prison
remedies -- which, for reasons to be noted, they were not -- the
plaintiff could not be found to have exhausted his remedies for any
claims other than the two mentioned in those letters.

    Defendants also cite the fact that plaintiff failed to respond
to their Rule 34 request for copies of any grievances or other
documentation of those grievances. (Defs.' R. 56.1 Statement ¶ 7;
Bowe Decl. ¶ 5). We note that, notwithstanding plaintiff's failure
to respond, defendants never sought relief from the court.
Defendants also do not acknowledge that the complaint in Rose v.
Masiey, No. 06 Civ. 464, annexed a copy of a completed grievance
form and letters that plaintiff represents that he sent to AMKC
Warden Brian Riordan and to Commissioner Martin Horn. Nonetheless,
even if we deem these attachments to be an implicit response to

21

defendants' document request, they reflect -- as we have noted -- that plaintiff raised only the commissary claim in his grievance and that he mentioned only that claim and the disposable-tray claim in his letters to the two senior officials, thus effectively barring relief for any other claim.

Apart from the limited substantive scope of plaintiff's administrative complaints, this record demonstrates that, at most, the only steps that he took were the filing of the one-claim grievance and the sending of letters to the DOC Commissioner and the warden of the AMKC facility. Thus, it appears that he failed to pursue, at the least, appeals to the Central Office Review Committee and to the Board of Corrections. These omissions reflect a failure to comply with the DOC procedures, and these procedural missteps in themselves require dismissal. See, e.g., Ruggiero, 467 F.3d at 176; Hernandez v. N.Y.C. Dept. of Corr., 2003 WL 542116, at *4 (S.D.N.Y. Feb. 18, 2003); Orta v. City of New York Dept. of Corr., 2003 WL 548856, at *2-*3 (S.D.N.Y. Feb. 25, 2003).

We further note that plaintiff does not attempt to fit his circumstances into any of the exceptions that our Circuit Court has recognized as potentially excusing a failure by a prisoner to comply fully with grievance-procedure requirements. Moreover, even

if we read his complaint as implicitly suggesting that he should be
excused from exhaustion because his grievances and his letters to
Warden Riordan and Commissioner Horn allegedly drew no response,
his argument would fail. As we have noted, the Second Circuit has
recognized a possible exception to the exhaustion requirement if
the plaintiff can demonstrate that the grievance procedure was not
available to him, and the Court noted that a demonstrated absence
of any response could at least raise the question of availability.
See Hemphill, 380 F.3d at 687 n.6. Nonetheless, in this case
plaintiff offers no evidence in support of this hypothesized
argument. Moreover, there is no question that a grievance procedure
was available regardless of whether plaintiff's alleged grievance
and letters were not responded to at the facility level. Not
surprisingly, then, the courts within our circuit have held with
some consistency that a failure by the facility to respond to a
grievance does not normally satisfy the Hemphill criterion. See,
e.g., Garcia v. Heath, 2013 WL 3237445, *6-7 (S.D.N.Y. June 25,
2013); Ramrattan v. Schriro, 2013 WL 3009908, *1-2 (S.D.N.Y. June
13, 2013); Fontanez v. N.Y.C. Dep't of Corrs., 2013 WL 1130877, *3
(S.D.N.Y. March 19, 2013).[7]

---

[7] We also note that a plaintiff alleging a lack of response
by the prison has a potentially firmer ground for avoiding
dismissal at the Rule 12(b)(6) stage than on summary-judgment
review, since a 12(b)(6) motion does not compel the plaintiff to

Finally, even if we interpreted the complaint as invoking the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc et seq., that would not avoid the problem of failure to exhaust. As made clear by the pertinent statutory language, the exhaustion requirement embodied in the PLRA applies not only to claims under section 1983, but also to claims asserted under other federal statutes, including the RLUIPA. 42 U.S.C. § 1997e(a)[8]; see, e.g., Porter, 534 U.S. at 524, 532; Carter v. City of New York, 2012 WL 1034914, *4 (S.D.N.Y.  March 23, 2012); Colliton v. Gonzalez, 2011 WL 1118621, *8 (S.D.N.Y. March 23, 2011). In any event, if plaintiff were to confine his claims to the RLUIPA, he would presumably be unable to obtain the relief he principally seeks, since the courts have held that this statute does not authorize damages awards against either a municipality or municipal employees in their individual or official capacities. (See Parris R&R at 20 n.9 (citing inter alia Sossamon v. Texas, 131

_____

offer proof of the contention that any of the Hemphill exceptions are applicable. Hence there are cases -- including this one -- in which an allegation of lack of response to a grievance has been held sufficient at least to pass pleading muster. (See Rose v. Masiey, No. 06 Civ. 464, (S.D.N.Y. Feb. 19, 2008) (report and recommendation on motion to dismiss) at 10-11).

[8] The statute provides that "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner... until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a) (emphasis added).

S.Ct. 1651, 1661 (2011); Jean-Laurent v. Lawrence, 2013 WL 1129813,
*7 n.9 (S.D.N.Y. March 19, 2013))).

In sum, judgment should be entered for defendants based on
plaintiff's failure to exhaust his administrative remedies.

II. Other Grounds for Summary Judgment

For reasons noted, we conclude that defendants' exhaustion
defense compels entry of summary judgment for defendants. We
nonetheless briefly address certain alternative grounds for
granting this relief even if the court were to conclude that Rose
had at least partially exhausted his claims.

As described, the one claim that plaintiff mentioned in his
grievances involved the failure of DOC to ensure that he learned at
the time of purchase of food items at the commissary that some of
those items contained pork or other products that were not
consistent with Halal requirements. However, as we recently noted
in the Parris case:

> [P]urchasers of food products at the commissary were free
> to examine the packages after their purchases and to
> determine whether they contained non-Halal -- notably pork-
> based -- ingredients... The fact that Parris may have

25

> mistakenly assumed that no non-Halal items were sold at the commissary... does not permit, much less compel, a finding that the sale of such items violated, or indeed meaningfully burdened, plaintiff's exercise of his First Amendment Free Exercise rights.

(Parris R&R at 16-17; see also Wesley R&R at 36-42). Since plaintiff must demonstrate that a challenged policy or practice imposes "a substantial burden" on his exercise of his religious beliefs (see Parris R&R 11-13 (citing inter alia Salahuddin v. Goord, 467 F.3d 263, 274-75 (2d Cir. 2006); Skoros v. City of New York, 437 F.3d 1, 29 (2d Cir. 2006); Ford v. McGinnis, 352 F.3d 582, 592 (2d Cir. 2003)), and plaintiff fails to do so, his commissary-related claims are not sustainable.

For similar reasons, the balance of Rose's claims, with the exception of the dishwasher claim, would fail on the merits even if they had been exhausted. Those claims were addressed in detail in the Wesley R&R, which rested on a substantial evidentiary record as to Rikers Island practices during the period at issue here, and we concluded there that the plaintiff could not prevail. (See Wesley R&R at 22-42; accord Parris R&R at 20-22). Since plaintiff here offers no other evidence to avoid this result, it follows that his claims too must fail.

Finally, we do not agree with defendants that the dishwasher claim can be disposed of on its merits. They rely in part on the very submissions that they made in their unsuccessful summary-judgment motion in <u>Wesley</u>, including a series of declarations by various DOC personnel (<u>see</u> Bowe Decl. Exs. G-L) and their <u>Wesley</u> Rule 56.1 Statement (Bowe Decl. Ex. M), but those submissions did not defeat the claim as a matter of law, for reasons set out at some length in the <u>Wesley</u> R&R (at 84-87) and recently reiterated in the <u>Wilson</u> R&R. (<u>Wilson v. City of New York</u>, No. 06 Civ. 7777 (S.D.N.Y. Mar. 15, 2013) (report & recommendation) at 19-20). Moreover, although defendants invoke the District Court's post-trial decision in <u>Wesley</u> (<u>see</u> Defs.' Mem. of Law 5-10) as a basis for disposing of the dishwasher claim, that argument fails for two reasons. First, plaintiff Rose was not a party to the <u>Wesley</u> litigation, and hence any factual finding made by the District Court in the <u>Wesley</u> bench trial cannot bind him, as a matter of collateral estoppel. <u>See</u>, <u>e.g.</u>, <u>Usina Costa Pinto S.A. Acucar E Alcool v. Louis Dreyfus Sugar Co., Inc.</u>, 933 F. Supp. 1170, 1178 (S.D.N.Y. 1996).[9] Second, the District Court's opinion in <u>Wesley</u> did not directly address the dishwasher claim (<u>see</u> Bowe Decl. Ex.

---

[9] It equally follows that the court's post-trial decision cannot bar plaintiff's claim in this case as a matter of <u>res judicata</u>. <u>See</u>, <u>e.g.</u>, <u>Taylor v. Sturgell</u>, 553 U.S. 880, 893-95 (2008); <u>Montana v. United States</u>, 440 U.S. 147, 163 n.10 (1979).

D), presumably because the pro se plaintiff in that case chose to focus his evidentiary presentation on other claims, even though they had previously been dismissed from the case.

In sum, we would not recommend granting summary judgment on the dishwasher claim on its merits. Nonetheless, since plaintiff failed to exhaust his administrative remedies, that claim must be dismissed.

## CONCLUSION

For the reasons stated we recommend that the complaint be dismissed for failure to exhaust administrative remedies.[10]

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. See also Fed. R. Civ. P. 6(a), 6(d). Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers

---

[10] In view of our recommended disposition, we do not address other alternative grounds pressed by defendants to justify summary judgment.

of the Honorable Lewis A. Kaplan, Room 1310, and to the chambers of the undersigned, Room 1670, U.S. Courthouse, 500 Pearl Street, New York, New York 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. <u>Small v. Sec'y of Health & Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 150-55 (1985), <u>reh'q denied</u>, 474 U.S. 1111 (1986).

Dated: New York, New York
      July 16, 2013

 

**MICHAEL H. DOLINGER**
**UNITED STATES MAGISTRATE JUDGE**

29

Copies of the foregoing Report and Recommendation have been
mailed today to:

Mr. Roosevelt Rose
DIN # 12A4671
Clinton Correctional Facility
1156 Rt. 374
P.O. Box 2001
Dannemora, New York 12929-2000

Martin Bowe, Esq.
Assistant Corporation Counsel
   for the City of New York
100 Church Street
Room 2-194
New York, New York 10007